```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC | : |
| v. | : Civil Action No. DKC 23-2477 |
| ELEVATION CIGARS & LOUNGE LLC a/k/a Cigars 210, LLC t/a Cigars 210 | : |

**MEMORANDUM OPINION**

Plaintiff G&G Closed Circuit Events, LLC ("Plaintiff") initiated this action on September 12, 2023, alleging a violation of the Communications Act of 1934 and the Cable & Television Consumer Protection and Competition Act of 1992 against Defendant Elevation Cigars & Lounge LLC ("Elevation"). Plaintiff filed an Amended Complaint on January 24, 2024, adding Robert Gooden as a Defendant. (ECF No. 16).

On September 12, 2025, Plaintiff filed a notification that Robert Gooden filed for bankruptcy protection on May 15, 2025. (ECF No. 34). Accordingly, this action will be administratively closed as to Defendant Robert Gooden.[1]

Plaintiff also filed a motion for default judgment as to Elevation Cigars & Lounge LLC on September 12, 2025. (ECF No. 35). The court now rules, no hearing being deemed necessary.

---

[1] *See* 11 U.S.C. § 362(a).

Local Rule 105.6. For the following reasons, Plaintiff's motion will be granted in part and denied in part.

## I. Background

Plaintiff filed a Complaint on September 12, 2023, alleging that Elevation Cigars & Lounge LLC, also known as Cigars 210, LLC, and trading as Cigars 210 ("Elevation"), made available to its patrons the Gervonta Davis v. Hector Luis Garcia championship fight ("the Program") on Saturday, January 7, 2023, without prior authorization from Plaintiff in violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 (unauthorized reception of cable services) and 605 (unauthorized publication or use of communications). (ECF No. 1). The Complaint states that Plaintiff was granted the exclusive right to license and distribute the Program to commercial establishments nationwide. (*Id.* ¶ 8). Plaintiff then entered into subsequent agreements with various commercial establishments that, in exchange for a fee, allowed them to exhibit the Program to their patrons. (*Id.* ¶ 9). Plaintiff alleges that Elevation's exhibition of the Program, without authorization, was "done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." *Id.* ¶ 12.

Elevation was served with Plaintiff's Complaint on September 1, 2023. (ECF No. 8). When Elevation failed to respond within the requisite time period, Plaintiff moved for the entry of

default on October 16, 2023. (ECF No. 8). The clerk entered default on November 13, 2023. (ECF Nos. 10, 11).

Robert Gooden ("Mr. Gooden") wrote a letter to the court on December 13, 2023, identifying himself as Elevation's owner and requesting an extension of time to move to vacate the default entered against Elevation. (ECF No. 12). On January 9, 2024, Plaintiff moved for leave to file an amended complaint to add Mr. Gooden as a defendant. (ECF No. 13). No opposition was filed and, consequently, Plaintiff was granted leave to file an amended complaint on January 24, 2024. (ECF No. 16). Plaintiff's Amended Complaint added Robert Gooden as a defendant and claims specific to him. (ECF No. 16). The claims as to Elevation remain unchanged.

On April 24, 2024, Plaintiff moved for, and was granted, until July 23, 2024, to effect service of the Amended Complaint upon Mr. Gooden. (ECF No.22). After encountering difficulty serving Mr. Gooden, Plaintiff filed a motion for alternative service on September 25, 2024. (ECF No. 25). The court granted the motion on September 25, 2024, having received no opposition, and directed that service of the Summons and Amended Complaint be effected on Mr. Gooden by posting on his residence and by mailing, first class mail, to his residence. (ECF Nos. 26, 27). Plaintiff filed an affidavit on October 9, 2024, reporting that service upon Mr. Gooden was effected as directed. (ECF No. 28).

3

On November 18, 2024, Plaintiff filed a motion to enter default against Mr. Gooden for his failure to plead timely after service of the Amended Complaint. (ECF No. 29). Clerk's default as to Robert Gooden was entered December 3, 2024. (ECF No. 31).

On September 8, 2025, the court issued a show cause order directing Plaintiff to show good cause why the case should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(b) and Local Rule 103.8.b. (ECF No. 33). Plaintiff responded on September 12, 2025, by filing three papers: 1) a response to the court's show cause order (ECF No. 36), 2) a Suggestion of Bankruptcy as to Mr. Gooden (ECF No. 34), and 3) the instant motion for default judgment against Elevation. (ECF No. 35). For the following reasons, the case will be administratively closed as to Robert Gooden and Plaintiff's motion for default judgment against Elevation will be granted in part and denied in part.

## II.  Standard of Review

Under Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The United States Court of Appeals for the Fourth

Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (*citing United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Fed.R.Civ.P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages ... because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

**III. Analysis**

The court first notes that Plaintiff's response to the show cause order, (ECF No. 36), did not provide any explanation for the months-long delay in moving for default judgment. However, given the posture of this case, the court will decline to dismiss this case under Fed. R. Civ. P. 41(b) or Local Rule 103.8.b. Four days after the court issued the show cause order, Plaintiff filed a response to the court's show cause order (ECF No. 36), a Suggestion of Bankruptcy as to Mr. Gooden (ECF No. 34), and the motion for default judgment against Elevation (ECF No. 35). While Plaintiff had not filed anything in this case between the clerk's entry of default on December 3, 2024, (ECF No. 31) and the court's show cause order on September 8, 2025, (ECF No. 33), the prompt response to the court's show cause order and the comprehensive nature of the current filings counsels against the "harsh sanction" of dismissal. *Shlikas v. SLM Corp.*, No. 09-cv-2806-WDQ, 2011 WL 2118843 (D.Md. May 25, 2011), *aff'd*, 546 F.App'x 290 (4th Cir. 2013) (quoting *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978)); *Cf*. *Dorsey v. Giant Food LLC*, No. 09-cv-2208-PJM, 2010 WL 597208, *1 (D.Md. Feb. 18, 2010) (dismissing under Rule 41(b) where the plaintiff had "failed to respond to three Motions to Dismiss" from the defendant and responded to a show cause order with a non-responsive document.)

In the Amended Complaint, Plaintiff asserts claims under 47 U.S.C. §§ 605 and 553, which are provisions of the Federal Cable Act. Section 553 prohibits the unauthorized interception or receipt of certain cable communications, while § 605 proscribes the unauthorized interception or receipt of certain "radio" communications, including at least "digital satellite television transmission." *Id.* at 588 n.3. In its Amended Complaint, Plaintiff does not specify how Defendants intercepted the program, but that omission is not fatal. "The complaint need not specify the precise method of interception, as pleading in the alternative is permitted." *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civ. No. CCB-11-3272, 2012 WL 5879127, at *4 (D.Md. Nov. 19, 2012). Instead, Plaintiff need only allege, as it does here, that a business entity "intercepted and displayed the Program at its establishment, without authorization from [Plaintiff], on a particular date and at a particular time." *Id.* Taking those factual allegations as true, Plaintiff has established a violation of either § 553 or § 605.[2]

---

[2] Defendant's motion for default judgment notes that "while entry of default necessitates a finding of liability under both sections 605 and 553, Plaintiff recognizes that the Maryland Courts have only awarded recovery under one statute, and thus Plaintiff seeks recovery under 47 U.S.C. § 605. . . .Due to Defendant's failure to appear and/or participate Plaintiff cannot isolate the precise method of the violation and requests that the Court award damages under section 605." (ECF No. 35-3, at 3-4). This court agrees with Plaintiff and finds that recovery under § 605 is

In the motion for default judgment, Plaintiff seeks $12,770.50 consisting of statutory damages of $1,874.75 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced damages of $9,373.75 under 47 U.S.C. § 605(e)(3)(C)(ii), and costs of $1,522.

**A.   Statutory Damages**

In support of its claim for statutory damages, Plaintiff attaches the affidavit of Jasmine Lee, an investigator, who observed the Program on five televisions inside Elevation's establishment known as Cigars 210 on January 7, 2023. (ECF No. 35-5). The investigator paid no cover charge to enter the establishment but purchased a cigar – a requirement to stay for the Program. (*Id.* at 1). She remained inside for approximately thirty minutes. (*Id.* at 1-2). Ms. Lee estimated that the establishment's capacity was approximately 50 people, and she counted between 17 and 25 patrons at the establishment. (*Id*. at 2). Plaintiff requests the award of statutory damages of $1,874.75. Plaintiff supports this request by multiplying 25, the largest number of patrons viewing the Program, by $74.99, the residential fee for viewing the Program. (ECF No. 35-7 at 3, 6).

"Statutory damages should approximate the amount the Plaintiff is out-of-pocket due to the violation. . . . [T]he statutory damages award that 'the court considers just,' 47 U.S.C.

---

proper. *See J & J Sports Prods., Inc. v. Sabor Latino Rest., Inc.,* No. 13-cv-3515-PJM, 2014 WL 2964477, *2 (D.Md. June 27, 2014).

8

§ 605(e)(3)(C)(i)(II), is an approximation of the damages actually incurred by Plaintiff due to Defendant's violation." *J & J Sports Prods. v. Mumford*, No. 10-cv-2967-DKC, 2012 WL 6093897, at *3 (D.Md. Dec. 6, 2012). District courts in this district utilize the licensing fee charged to broadcast the program as a benchmark. *See J & J Sports Prods., Inc. v. Plaza Del Alamo, Inc.*, No. 15-cv-0173-TDC, 2016 WL 153037, at *3 (D.Md. Jan. 12, 2016); *J & J Sports Prods., Inc. v. KD Retail, Inc.*, No. 16-cv-2380-PX, 2017 WL 1450218, at *2 (D.Md. Apr. 20, 2017).

The rate chart indicates that if Elevation had purchased a license, it would have paid $600 to exhibit the Program in an establishment with a 50-person capacity. (ECF No. 35-6). Accordingly, Plaintiff will be awarded statutory damages under § 605(e)(3)(C)(i)(II) in the amount of $600.

B.   **Enhanced Damages**

Plaintiff seeks enhanced damages of five (5) times the statutory damages award. 47 U.S.C. § 605(e)(3)(C)(ii) authorizes "the court in its discretion . . . [to] increase the award of damages . . . by an amount of not more than $100,000 for each violation" of the provision. "In determining whether enhanced damages are warranted, other courts in this circuit have looked to several factors:   1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gain; 4) advertising the broadcast; and 5) charging an

9

admission fee or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Royster*, Civ. No. 11-cv-1597-RWT, 2014 WL 992779, at *4 (D.Md. Mar. 13, 2014) (quoting *J & J Sports Prods., Inc. v. Quattrocche*, No. 09-cv-3420-WMN, 2010 WL 2302353, at *2 (D.Md. June 7, 2010).

Here, the fact that Elevation intercepted and exhibited the Program willfully and for direct or indirect commercial advantage is not in doubt.  "After all, '[s]ignals do not descramble spontaneously, nor do televisions sets connect themselves to cable distribution systems.'" *J & J Sports Prods., Inc. v. Castro Corp.*, No. 11-cv-0188-AW, 2011 WL 5244440, at *4 (D.Md. Nov. 1, 2011) (alteration in original) (*quoting Time Warner Cable v. Googuies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)).

It is unclear from Ms. Lee's Affidavit just how much Elevation benefitted financially from broadcasting the Program.  Ms. Lee says that "[t]o stay for the fight you had to purchase a cigar from the house."  (ECF No. 35-5, at 1).  She also indicates that there was "a chalkboard sign with the deals b[u]y two cigars or buy one cigar for 20 or pay the $15 walk-in fee."  (*Id.*).  Between 17 and 25 patrons viewed the Program, which was below the establishment's capacity of 50 people.  Moreover, Elevation serves no alcoholic beverages.  Thus, it does not appear that Elevation profited substantially from the broadcast of the Program.

10

The motion is silent on whether Elevation engaged in such conduct before or after the incident. "Where there are no allegations of repeat behavior or otherwise *egregious* willfulness warranting harsh punitive damages, courts in this Circuit have varied in awarding enhanced damages from no enhanced damages to up to five times the statutory damage amount." *Quattroche*, 2010 WL 2302353, at *3 (emphasis added).

As noted in *J & J Sports Prod., Inc. v. Sabor Latino Rest., Inc.*, No. 13-cv-3515-PJM, 2014 WL 2964477, at *3 (D.Md. June 27, 2014), "some enhanced damages are proper to deter potential future unlawful uses of communications." Accordingly, enhanced damages of $1,200, or double the statutory damages, will be awarded.

### C. Attorneys' Fees

Plaintiff reserves the right to request a supplemental award of attorneys' fees. Plaintiff is reminded that under Local Rule 109.2, barring circumstances not present here, "any motion requesting the award of attorneys' fees must be filed within fourteen (14) days of the entry of judgment."

### D. Costs

Plaintiff seeks $1,522 in costs consisting of the $402 filing fee paid when this action was initiated, a $15 courier fee to deliver the complaint to this court, a $725 investigator fee, and $380 to effectuate service. The $15 courier fee is not a

11

reimbursable expense and will not be awarded. Local Rules, Appendix B. The record supports the award of $1,507 in costs.

**IV. Conclusion**

For the foregoing reasons, the motion for default judgment filed by Plaintiff will be granted in part and denied in part. Judgment will be entered for Plaintiff and against Elevation for statutory and enhanced damages in the amount of $1,800, plus costs of $1,507. A separate order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge